UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Craig Battiste,

        Petitioner,                        Case Number: 22-cv-10539
                                                  Honorable Denise Page Hood

v.

James Schiebner,[1]

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION,
DENYING CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

      Petitioner Craig Battiste, a Michigan state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  He challenges his convictions in August 2000 for first-degree home invasion, twelve counts of first-degree criminal sexual conduct, two counts of armed robbery, two counts of kidnapping, bank robbery, unlawfully driving away another's motor vehicle, possession of a firearm during the commission of a felony, and conspiracy to commit first-degree home invasion, armed robbery, kidnapping, and first-degree criminal sexual conduct.  He raises four claims for relief.

---

[1] The proper respondent in a habeas case is the custodian of the facility where the petitioner is incarcerated.  *See* Rule 2(a), Rules Governing Section 2254 Cases.  The Court orders that James Schiebner, the warden of Petitioner's current place of incarceration, be substituted as the Respondent.

For the reasons set forth below, the Court denies the petition and declines to issue a certificate of appealability. The Court grants Petitioner leave to proceed *in forma pauperis* on appeal.

## I. Background

Following a jury trial in Eaton County Circuit Court, Petitioner was convicted of first-degree home invasion, Mich. Comp. Laws § 750.110a(2); two counts of first-degree criminal sexual conduct involving a weapon, Mich. Comp. Laws § 750.520b(1)(e); ten counts of first-degree criminal sexual conduct during the course of another felony, Mich. Comp. Laws § 750.520b(1)(c); two counts of armed robbery, Mich. Comp. Laws § 750.529; two counts of kidnapping, Mich. Comp. Laws § 750.349; bank robbery, Mich. Comp. Laws § 750.531; unlawfully driving away another's motor vehicle Mich. Comp. Laws § 750.413; possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b; and conspiracy to commit first-degree home invasion, armed robbery, kidnapping, and first-degree criminal sexual conduct, Mich. Comp. Laws § 750.157a. On September 8, 2020, the trial court sentenced him to concurrent prison terms of: 150 to 240 months for the home invasion conviction; 400 to 720 months for each criminal sexual conduct conviction; 300 to 480 months for each armed robbery conviction; 400 to 720 months for each kidnapping conviction; 225 to 480 months for the bank robbery conviction; 24 to 60 months for the unlawfully driving away

an automobile conviction; 95 to 240 months for the conspiracy to commit home invasion conviction; 210 to 480 months for the conspiracy to commit armed robbery conviction; and 260 to 480 months each for the conspiracy to commit kidnapping and conspiracy to commit criminal sexual conduct convictions. Petitioner was also sentenced to two years' imprisonment for the felony-firearm conviction to be served before and consecutive to his other sentences.

Petitioner filed an appeal by right in the Michigan Court of Appeals. The Michigan Court of Appeals set forth the following relevant facts:

> This case arises from a crime spree that began in Mulliken and continued to Detroit, during the early morning hours of November 14, 1999. The prosecution presented evidence that defendant and two others entered a home, threatened a young woman with guns, and repeatedly raped her. The assailants also demanded money and other property from her father. The father testified that during this ordeal he was bound and gagged with duct tape and left in his basement bedroom.[1] Thereafter, one of the assailants forced the young woman to drive him to a bank and withdraw money from an ATM machine. Upon returning to her home, the perpetrators, joined by a fourth person, forced the young woman into a sport utility vehicle and drove her to Detroit, repeatedly raping her on the way. When the assailants reached Detroit they rented a motel room and continued their campaign of sexual assault against the young woman. Later that morning, she was dropped off at a restaurant in Novi.
>
> Antoine Wilkins testified that he participated in the criminal conduct at issue and that he was convicted for his criminal actions. Wilkins further admitted that he was testifying against defendant in exchange for the prosecutor's recommendation that Wilkins receive the recommended minimum sentence range within the sentencing guidelines. Wilkins' testimony substantially confirmed the female complainant's account of events.

Wilkins identified himself, defendant, David Nealy, and Patrick Lang as the four assailants. According to Wilkins, the group drove to East Lansing in defendant's Ford Expedition allegedly to attend a party. Wilkins testified that they stopped at a gas station on the way to East Lansing. While they were stopped, Wilkins claimed that defendant expressed a need to purchase more duct tape, but Patrick Lang replied that they already had enough tape. Wilkins stated that they were in the East Lansing area for approximately two hours before spotting the victim near a Quality Dairy. Upon seeing the victim, Wilkins alleged that defendant made the comment "[t]here's the one right there" and turned the car around. As they followed the victim's car, Wilkins overheard his companions discussing a desire to "hit a lick," which he understood to mean "[g]rab somebody." Wilkins testified that during this discussion he heard Patrick Lang state that he wanted to have sex with the victim.

---

[1]The father was eventually able to escape from his restraints and call the police from a neighbor's phone.

*People v. Battiste*, No. 230439, 2002 WL 31297138, at *1–2 (Mich. Ct. App. Oct. 11, 2002). These facts are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

Petitioner raised these claims in his appeal by right to the Michigan Court of Appeals:

I. Did the trial court abuse its discretion when it denied the pre-trial Motion for Change of Venue?

II. Did the trial court abuse its discretion when it denied the post-judgment Motion for a New Trial on the grounds of adverse pre-trial publicity?

III. Did the trial court commit reversible error in the admission of the statements of non-testifying codefendants Patrick Allen Lang and David Nealy, through the testimony of Antoine Wilkins?

IV. Did the trial court abuse its discretion when it denied the post-judgment Motion for a New Trial on the grounds of remarks made by the prosecuting attorney during closing argument which were not supported by the record?

V. Did the trial court abuse its discretion when it denied the post-judgment Motion for a New Trial on the grounds of remarks made by the prosecuting attorney during closing argument which invited the jury to consider non relevant and immaterial prejudicial and inflammatory views relating to a protected class?

The Michigan Court of Appeals affirmed Petitioner's convictions. *Battiste*, 2002 WL 31297138. The court of appeals also denied Petitioner's motion for rehearing. *People v. Battiste*, No. 230439 (Mich. Ct. App. Dec. 18, 2002).

Petitioner did not seek leave to appeal the Michigan Court of Appeals' decision in the Michigan Supreme Court. *See* Affidavit of Larry Royster, dated February 8, 2023 (ECF No. 12-20, PageID.3250).

On February 28, 2017, Petitioner filed a motion for relief from judgment in the trial court. He raised these claims:

I. Defendant-Appellant Battiste's Sixth and Fourteenth Amendment rights were violated by judicial fact finding that increased the floor of the permissible sentence in violation of *Alleyne v United States*.

II. Where the prosecution's case relied solely on witness testimony, counsel's complete failure to conduct pretrial preparatory investigative interviews of any of the prosecution's witnesses constructively deprived Defendant Battiste of his Sixth Amendment right to counsel because counsel was unable to subject the prosecution's case to any meaningful adversarial testing.

5

    III.    Where the trial court classified both of the complaining witnesses as actual "victims", i.e., persons harmed by Defendant's criminal actions and this biased judicial characterization ultimately caused the trial court judge to pierce the veil of judicial impartiality, created presumptions in favor of the prosecution, and invaded the province of the jury, the trial court's actions violated Defendant's federally protected right to not only be tried before a neutral and detached judge but also to have the jury be the ultimate trier of fact on every essential element of the charged offenses.

    IV.    Defendant Battiste is entitled to have his appeal of right reinstated where attorney Barnett without Defendant's authorization filed an appeal on his behalf without ever consulting him, without allowing him participation in his appeal, and without allowing him to offer input, and alternatively, where appellate counsel was ineffective for omitting strong, obvious, and meritorious constitutional violations from the direct appeal of right.

    V.    Reversal is required where Defendant Battiste was left without any form of representation at all during the critical pre-trial investigative stage of the case when attorney Barnett was suspended for unprofessional misconduct yet failed to inform his client and failed to advise his client of the need to secure counsel while he was suspended.

The trial court denied the motion. *See People v. Battiste*, No. 00-020001-FC (Eaton County Cir. Ct. March 13, 2019) (ECF No. 5-12).

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. He raised four of the five claims raised in his motion for relief from judgment, omitting the *Alleyne*-related claim. The Michigan Court of Appeals denied leave to appeal "because defendant has failed to establish that the trial court

erred in denying the motion for relief from judgment." *People v. Battiste*, No. 350600 (Mich. Ct. App. Jan. 24, 2020).

Petitioner did not seek leave to appeal the court of appeals' decision to the Michigan Supreme Court. See Affidavit of Larry Royster (ECF No. 12-20, PageID.3250).

Over the next several years, Petitioner filed multiple motions in the trial court, all of which were denied.

On March 14, 2020, Petitioner then filed this habeas petition *pro se*. He seeks relief on these claims:

> I. Cronic's presumption of prejudice applies due to counsel's wholesale failure to conduct any pre-trial preparatory investigatory interviews of any prosecution witnesses to be able to prepare to subject the prosecution's case to meaningful adversarial testing coupled with the fact that Petitioner was left without an attorney for thirty (30) days, from June 18, 2000 to July 17, 2000—while his counsel was suspended from the practice of law for misconduct.
>
> II. By classifying the complaining witnesses as actual "victims" the trial court judge unconstitutionally pierced the veil of judicial impartiality, created presumptions in favor of the prosecution, and invaded the province of the jury.
>
> III. Petitioner's Sixth and Fourteenth Amendment rights were violated by judicial fact finding that increased the floor of the permissible sentence in violation of *Alleyne v. United States*, 570 U.S. 99 (2013).
>
> IV. Petitioner is entitled to have his appeal of right reinstated where his trial court counsel filed an appeal on Petitioner's behalf without ever consulting Petitioner, without allowing

7

>Petitioner's participation in his appeal, and without allowing Petitioner to offer input, and alternatively, where appellate counsel was ineffective for omitting strong, obvious, and meritorious constitutional violations on the direct appeal of right.

On May 4, 2020, the Court issued an Order to Show Cause why the petition should not be dismissed as untimely. (ECF No. 3.) On June 18, 2022, Petitioner filed a response through counsel. (ECF No. 4.)

The Court ordered Respondent to file a responsive pleading. (ECF No. 5.) Respondent has filed an answer in opposition, arguing that the petition is untimely, that all of Petitioner's claims are procedurally defaulted, and that all the claims are meritless. (ECF No. 10.)

## II. Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 548 U.S. 122, 124-25 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

#### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a one-year limitations period during which a state prisoner can bring a federal habeas corpus petition. 28 U.S.C. § 2244(d)(1). Respondent argues that the one-year limitations period commenced on February 13, 2003, when the time for Petitioner to seek direct review of his convictions ended, and ran uninterrupted

until it expired one year later. (ECF No. 10, PageID.131.) This, Respondent maintains, means the petition is untimely by over 18 years. (*Id.*) Petitioner argues that the trial court's July 13, 2020 order denying his motion for clarification reset the one-year limitations period to zero. (ECF No. 4, PageID.42-44.)

For the reasons explained in detail below, the Court concludes that Petitioner is not entitled to relief because his claims are unexhausted and procedurally defaulted. The Court therefore declines to determine whether the petition was timely under AEDPA. *See Moss v. Miniard*, 62 F.4th 1002, 1010 (6th Cir. 2023), cert. denied, 144 S. Ct. 1004 (2024) (explaining that AEDPA's one-year statute of limitations is not jurisdictional and that the court may proceed to the merits of the petition in the interest of judicial economy).

## B. Exhaustion and Procedural Default

Respondent argues that Petitioner's claims are procedurally defaulted. The Court finds that the claims are unexhausted and, because no avenue remains for state court exhaustion of these claims, they are procedurally defaulted.

A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). State prisoners in Michigan must raise

each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather v. Rees*, 822 F.2d 1418, 1420, n.3 (6th Cir. 1987).

Petitioner raised the claims raised in his petition for the first time in a motion for relief from judgment in the trial court. He then raised all but his *Alleyne* claim in an application for leave to appeal to the Michigan Court of Appeals. He did not present any of his claims to the Michigan Supreme Court. Therefore, these claims are unexhausted.

Petitioner can no longer exhaust these claims because he already filed a motion for relief from judgment in the state trial court and does not argue that his claims fall within the narrow exception to the prohibition against filing successive motions for relief from judgment in state court. Where a petitioner "fails to present his claims to the state courts and ... is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995). Instead, Petitioner's claims are procedurally defaulted and will not be considered unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that

11

failure to consider his claims will result in a fundamental miscarriage of justice. *Id.*

Petitioner cannot assert ineffective assistance of appellate counsel as cause to excuse his default. While ineffective assistance of appellate counsel might explain Petitioner's failure to raise these claims on direct appeal, it does not excuse Petitioner's own failure to fully present these claims to the Michigan Supreme Court on state court collateral review. *See Gadomski v. Renico,* 258 F. App'x 781, 784 (6th Cir. 2007). Petitioner cannot attribute his failure to raise these claims in an application for leave to appeal to the Michigan Supreme Court to appellate counsel or post-conviction counsel. *See Martinez v. Ryan*, 566 U.S. 1, 16 (2012) (holding that the failure of post-conviction counsel to raise a claim on appeal from "initial-review collateral proceedings ... and petitions for discretionary review in a State's appellate courts" may not be used to establish cause for a petitioner's procedural default).

Accordingly, these claims are procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The Supreme Court has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Id*. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would

have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, these claims are procedurally barred.

### IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). When a court denies relief on procedural grounds, a COA should issue if it is shown that reasonable jurists would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that reasonable jurists would find it debatable whether the court was correct in its procedural ruling. *Id.* Petitioner makes no such showing. He fails to make a substantial showing of the denial of constitutional right as to his claims and reasonable jurists would not debate the correctness of the court's substantive or procedural rulings. Accordingly, the Court declines to issue a COA.

## V. Conclusion

For the reasons set forth, the Court DENIES the petition for writ of habeas corpus and DENIES a certificate of appealability. The Court grants Petitioner leave to appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

SO ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated: March 28, 2025